UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

UNITED STATES OF AMERICA )
)
  v. ) Cause No. 1:05-CR-19
)
HAROLD STINSON )
)
  Defendant. )

## OPINION

This cause is before the court upon a request for downward departure from the sentencing guidelines made by Defendant, Harold Stinson,  ("Stinson") on June 30, 2005.  On July 14, 2005, the Government responded to the request and an evidentiary hearing followed on July 18, 2005. At the close of the evidentiary hearing, the probation officer was directed to prepare a report relating the facts set forth by defense counsel at the hearing and the parties were ordered to file supplemental sentencing briefs once they received the probation officer's report.  The last of these supplemental briefs was received on September 8, 2005. For the following reasons, the court will DENY the request for a departure.

## FACTUAL BACKGROUND

On February 23, 2005, a federal grand jury returned a two (2) count indictment against Stinson alleging in Count 1 that he was a felon in possession of firearm in violation of 18 U.S.C. §922(g)(1) and, in Count 2, forfeiture pursuant to 18 U.S.C. §924(d)(1). On May 11, 2005, Stinson pled guilty pursuant to a written plea agreement to both counts of the indictment. Thereafter, the probation officer prepared a presentence investigation report ("PSR").

The underlying facts of Stinson's conduct are detailed at length in the PSR.  For present

1

purposes, it is enough to recount that Department of Natural Resources Conservation Officer Anthony Runyon ("Officer Runyon") became aware of Stinson's possession of a shotgun after he responded to a complaint by two citizens of a person hunting without consent at 11325 East 650 North in Orland, Indiana.  Stinson's vehicle was located in a driveway of a residence and Officer Runyon learned that Stinson had a prior felony conviction for assault with a dangerous weapon. Witnesses reported that Stinson was hunting with a .410 shotgun.  At the time, Stinson had active warrants for his arrest in Michigan.  Stinson was not apprehended at the scene but turned himself in to authorities at a later date.

The above conduct resulted in a total offense level of 21.  Stinson's extensive criminal history, detailed *infra*,  placed him in criminal history category V.  This put Stinson's advisory guideline range at  70-87 months imprisonment.  Prior to sentencing, Stinson filed a Motion for Downward Departure pursuant to USSG §5K2.11 seeking a reduction from this advisory guidelines range to a sentence "not greater than" 51 months.  Otherwise, Stinson seeks a departure under the court's newly found discretion to depart using the §3553 factors as a guide.  It is to these issues that the court now turns.

A.     **Departure Motion**

Stinson seeks a downward departure pursuant to USSG §5K2.11 which permits a departure when the defendant committed the crime to avoid a perceived greater harm. During the sentencing hearing, Stinson's counsel asserted that Stinson committed the offense to provide food for his longtime friend with whom he lived and her family and that the public interest and his friend's welfare would be served by the downward departure.

The record reflects that Stinson began living whith Angela Cole ("Cole"), a longtime friend,

2

her two children[1] and Ms. Cole's mother in July 2004.  When Stinson moved into Cole's residence, he was aware that he had active warrants from Michigan.  In October 2004, Cole underwent gastric bypass surgery due to morbid obesity.  At the time of her surgery, Cole weighed nearly 550 pounds. Following her surgery, Cole returned home and was placed on a restricted diet and vitamin regimen and instructed to remain in bed until fully recovered.  According to Cole's physician's office, they believed Stinson was helping her throughout her recovery process as he had attended appointments with her.  Cole also testified that Stinson provided help to her during this time including preparing meals, and assisting her in routine care for herself.  At the time of the sentencing hearing, Cole weighed 347 pounds.  Her physician's office indicates that while Cole is still considered obese, her mobility has increased substantially and she is capable of caring for herself.  Ms. Cole also qualifies and receives food stamps, child support and disability income to aid her and her children in their monthly expenses.

A downward departure under § 5K2.11's "greater harms" prong applies only in "narrow, extreme circumstances..." *United States v. Barajas-Nunez,* 91 F.3d 826, 832 (6th Cir. 1996). Further, a departure under this prong of § 5K1.11 "is typically inappropriate where the defendant could have pursued other means of avoiding the greater harm rather than committing a crime." *United States v. Grewal,* 2 F.Supp.2d 612, 624 (D.N.J.1998). *See also United States v. Hunter,* 980 F.Supp. 1439, 1449 (M.D.Ala.1997). In *United States v. Murray,* 89 F.3d 459 (7th Cir.1996), the Seventh Circuit rejected an argument that a defendant's possession of a firearm in an automobile around midnight with crack cocaine in his car entitled him to a § 5K2.11 downward departure. The Seventh Circuit

---

[1]The children are not Stinson's biological children nor is he under any legal obligation to support them.

noted: "If Murray, a convicted felon, kept a firearm in his house on a particular day because of a direct, imminent threat of harm from an anticipated intruder, he might conceivably find comfort under § 5K2.11." *Id.* at 463.

In this case, there is simply no evidence that Cole and her family risked starvation or any other harm if Stinson did not possess a shotgun to hunt.  Rather, the evidence is that Cole received money through various resources to provide her and her family with food. Nothing in the record suggests that there was an imminent risk sought to be avoided by Stinson's conduct.

More importantly, however, § 5K2.11 contemplates the court will analyze the interest of society in punishing Stinson's possession of the firearm against the perception of a greater harm. Congress enacted federal gun control legislation to "curb crime by keeping 'firearms out of the hands of those not legally entitled to possess them because of age, criminal background, or incompetency.'" *Huddleston v. United States,* 415 U.S. 814, 824 (1974) (*quoting* S.Rep. No. 1501, 90th Cong., 2d Sess., 22 (1968)). In *Huddleston,* the Supreme Court noted that Congress was concerned with possession of firearms by individuals "whose possession of weapons would be contrary to the public interest." *Id.* at 828; *United States v. Gillies,* 851 F.2d 492, 494 (1st Cir.1988), *cert. denied,* 488 U.S. 857, 109 S.Ct. 147, 102 L.Ed.2d 119 (1988) ("Congress wished...to achieve a crime-control objective, namely, stopping convicted felons from possessing guns."). Further, a conviction under § 922(g) "focuses not on the defendant's reason for possessing a firearm, but on his status that bars him from possessing a firearm or ammunition." *United States v. Crawley,* 213 F.Supp.2d 1250, 1261 (D.Kan.2002).

Here, it is clear that Stinson is precisely the type of individual that Congress intended to prevent from possessing a firearm.  Stinson's criminal history is particularly violent and virtually

all of his convictions involve the use of a weapon or threatened use of a weapon. Indeed, Stinson has been convicted of assault with intent to commit unarmed robbery wherein he repeatedly assaulted a 19 year old male with numchucks. He has convictions for domestic violence and assault with a dangerous weapon wherein he assaulted his live-in girlfriend with a steak knife and threatened to murder her and her children. If this were not enough, Stinson has violated terms of his probation on several occasions, has a pending charge in Michigan for breaking and entering and the presentence report is replete with statements that Stinson has had adjustment difficulties with other inmates requiring him to be moved by authorities on numerous occasions to different cell blocks. Thus, Stinson clearly has a history of repeatedly, and often violently, offending the law thereby making any departure in this case contrary to the public interest.

Given the above, this Court concludes that Stinson failed to sustain his burden to demonstrate he is entitled to a §5K2.11 "greater harm" downward departure. Stinson's possession of a shotgun was contrary to society's interest as clearly expressed in federal firearms legislation and he has not demonstrated his possession of the firearm was justified.

**B.     Sentencing Factors: 18 U.S.C. § 3553**

Nevertheless, the court could still depart from the advisory guidelines after consideration of 18 U.S.C. § 3553(a) and the factors set forth therein. That provision requires courts to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph 2." Section 3553(a)(2) states that such purposes are:

(A)     to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B)     to afford adequate deterrence to criminal conduct;

(C)     to protect the public from further crimes of the defendant; and

(D)     to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

5

Section 3553(a) instructs sentencing courts to consider: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed based on the purposes described above; (3) the kinds of sentences available; (4) the sentencing range established by the guidelines; (5) any pertinent policy statements issued by the Sentencing Commission; (6) the need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct; and, (7) the need to provide restitution to any victims of the offense.

Having reviewed the above factors in this case, it is clear that they do not warrant a departure from the advisory guidelines. As noted previously, the societal interest, in particular, the need to protect the public from further crimes by Stinson, weighs heavily in favor of having Stinson serve the full length of the sentence provided by the guideliness. Further, it is clear from Stinson's criminal record that the sentence established by the advisory guidelines is necessary to promote respect for the law and to provide adequate deterrence to future criminal conduct

In short, the statutory factors under § 3553 do not justify a sentence that varies with the advisory sentencing. Accordingly, a sentence within the advisory guidelines is appropriate and reasonable in this case. Indeed, the Seventh Circuit has recently indicated that "any sentence that is properly calculated under the Guidelines is entitled to a rebuttable presumption of reasonableness." *United States v. Mykytiuk*, 415 F.3d 606, 608 (7th Cir. 2005), The Seventh Circuit further advised that while the rebuttable presumption is a deferential standard, *Id.* (citing cases)*,* "it will be a rare Guidelines sentence that is unreasonable*."* *Id.* Accordingly, the court intends to sentence Stinson within the advisory guideline range of 70 to 87 months. Stinson's request for a downward departure is therefore DENIED.

6

**CONCLUSION**

Based on the foregoing, Stinson's request for a downward departure is DENIED. A sentencing date shall be set by way of a separate minute entry. At the hearing, the court will hear argument from counsel as to where within the advisory guideline range of 70 to 87 months Stinson should be sentenced.

Entered: September 23, 2005

s/ William C. Lee
United States District Court
Northern District of Indiana